800 So.2d 918 (2001)
STATE of Louisiana
v.
Shawn HIGGINS.
No. 01-KA-368.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2001.
*919 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Richard Bates, James F. Scott, III, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Frank Sloan, Louisiana Appellate Project, Covington, LA, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Defendant, Shawn Higgins, appeals his conviction on a charge of second degree murder and his sentence of life imprisonment. For reasons that follow, we affirm.
A Jefferson Parish Grand Jury indicted the defendant for the first degree murder of Carl Jackson. Subsequently, the State *920 amended the indictment to charge the defendant with second degree murder. After a hearing, the trial judge denied a defense motion to suppress the identification. The matter went to trial, and on February 26, 2000 a twelve-person jury unanimously found the defendant guilty of second degree murder. On March 3, 2000, the trial judge sentenced the defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Thereafter, the defendant moved for an oral appeal, which the trial judge granted.
In brief to this court, defendant argues that the trial court erred in the denial of his motion to suppress the identification. He asserts that his conviction and sentence should be reversed because the conviction was the result of an unduly suggestive photographic lineup.

FACTS
At approximately 10:30 p.m. on October 25, 1998, Carl Jackson was shot and killed in the stairwell of an apartment complex in the Golden Heights subdivision in Marrero. According to the physician who performed the autopsy, Jackson sustained fourteen gunshot wounds, at least three of which were fatal.
At the hearing on the motion to suppress, Ben Rocque, Carl Jackson's cousin, testified that he and Jackson visited a friend, Shawn Boudreaux, on the evening of the shooting. After the visit Rocque and Jackson descended the stairs from Boudreaux's apartment. When Jackson reached the bottom of the stairs, Rocque saw a man he later identified as Higgins jump out behind Jackson and point a gun at Jackson. After Rocque yelled a warning to Jackson, Higgins turned and pointed the gun at Rocque. Rocque began running up the stairs, but he tripped and fell. Rocque said he looked around, but could not see Higgins or Jackson. He then ran down the stairs and peeked around the corner. Rocque saw Higgins pointing the gun at Jackson, who was saying "I ain't got nothing. I don't have nothing." Rocque said that he could not see the defendant's face at that time, but knew it was the same person he had seen earlier because the man was wearing the same clothing as he had seen before.
Rocque ran back to the apartment to tell Boudreaux that Jackson was getting robbed, and to obtain a weapon. However, while inside the apartment, Rocque heard gunfire. When he looked out of the window, Rocque saw Jackson lying on the ground. By the time Rocque returned downstairs, Jackson was dead.
Rocque admitted that he initially told the officers he did not know what had happened. Later that night he told the police that he saw the assailant, but did not see the actual shooting. Rocque said he described the person he had seen to the police, and a sketch was drawn. The next morning, Deputy Michael Tucker complied a six-person photograph lineup containing the defendant's photograph, and Rocque identified the defendant as the assailant. Because Rocque was not absolutely certain about his identification, Deputy Tucker showed Rocque another six-person photographic lineup containing a more recent photograph of the defendant. When Rocque viewed the second lineup, he positively identified the defendant.
The defendant argues that the trial court improperly denied his motion to suppress the identification because the physical lineup was suggestive and resulted in a substantial likelihood of misidentification. The State responds that the trial judge properly denied the motion to suppress, and that there was no substantial likelihood of misidentification.
A defendant challenging an identification procedure must prove that the *921 identification was suggestive and that there was a substantial likelihood of misidentification. State v. Lowenfield, 495 So.2d 1245, 1253 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986). Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). According to Manson v. Brathwaite, the factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation.
Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Martin, 595 So.2d 592, 595 (La.1992); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 69, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. In evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. at 113, 117, 97 S.Ct. at 2252, 2254; State v. Winfrey, supra. Finally, when determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial. State v. Burkhalter, 428 So.2d 449, 455 (La.1983); State v. Byes, 94-611 (La.App. 5 Cir. 12/28/94), 648 So.2d 1073, 1074.
Defendant contends that the identification by Ben Rocque was suggestive because Rocque had seen defendant's photograph in a previous photographic lineup. According to defendant, Rocque's certainty of the identification was a direct result of the fact that defendant's photograph was the only one repeated in the second photographic lineup.
A review of the jurisprudence indicates that an identification procedure is not suggestive merely because a witness has previously seen a defendant's photograph. In State v. Calloway, 97-796 (La. App. 5 Cir. 8/25/98), 718 So.2d 559, writ denied, 98-2435 (La.1/8/99), 734 So.2d 1229, a witness positively identified defendant from a physical lineup. The witness had previously seen two photographic lineups, but did not make an identification from the photographs. On appeal, defendant claimed that the identification was suggestive because the witness had previously seen defendant in two photographic lineups. Also, he urged the identification was suggestive, since the defendant's photograph was assigned a number "3" in the photographic lineup and defendant was in the third position in the physical lineup. Id. at 565. On review, this court found that the record did not support the claim that the witness identified defendant merely because he had previously seen defendant's photograph. Further, the witness testified at the suppression hearing that no one coerced or forced him to make an identification from the physical lineup.[1]Id.
Additionally, the State's brief cites several cases that have held an identification *922 procedure was not suggestive even when the defendant's photograph was repeated in another photographic lineup. For example, in State v. Neslo, 433 So.2d 73, 77-78 (La.1983), witnesses positively identified defendant from a physical lineup after viewing several photographic lineups in which only the defendant's photograph was repeated. Citing Neslo, the Louisiana Supreme Court emphasized that an identification procedure is suggestive when it unduly focuses a witness' attention on the suspect. State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1145.
In this case, we do not find that the identification procedure was suggestive. Ben Rocque stated at the suppression hearing that the police did not indicate that he should focus on any photograph from either photographic lineup that he was shown. Detective Tucker characterized Rocque's first identification of defendant as "tentative," and as a result, he showed Rocque a second photographic lineup, which contained a more recent photograph of the defendant. Thus, the witness was not shown the same photograph in the second line-up. Detective Tucker confirmed that he did not direct Rocque's attention to any particular picture in either the first or second photographic lineup. Detective Tucker stated that after Ben Rocque saw the second lineup, he was "100 percent sure." Based on these circumstances, we do not find that the identification procedure was suggestive. Accordingly, we find that the trial court correctly denied defendant's motion to suppress the identification.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In Calloway, supra, this Court reversed the defendant's conviction on the basis that his constitutional right to present his defense was adversely limited by the trial court's preventing him from calling certain defense witnesses to testify and by its refusal to order the State to turn over the statements of other witnesses.