844 So.2d 119 (2003)
STATE of Louisiana
v.
Jamaude SMITH.
No. 02-KA-1018.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2003.
*121 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Thomas J. Butler, Terry M. Boudreaux, Cameron M. Mary, Walter G. Amstutz, Assistant District Attorneys, Gretna, LA, for Appellee.
Jane L. Beebe, Gretna, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant Jamaude Smith appeals his conviction for attempted simple burglary. We affirm for the reasons to follow.
Smith was charged with a violation of LSA-R.S. 14:27:62, was arraigned and pled not guilty. Prior to trial, the bill of information was amended to charge Smith with simple burglary in violation of LSA-R.S. 14:62. Also prior to trial, Smith's motions to suppress statement and identification were heard and denied. The matter proceeded to trial, following which a six-person jury found him guilty as charged. Smith was sentenced to six years with the Department of Corrections and given credit for time served. The state filed a multiple bill of information on the same date alleging Smith to be a second felony offender. Smith admitted the allegations of the multiple bill after being advised of his rights by the trial court. The trial court later vacated the original sentence and Smith was sentenced to serve six years with the Department of Corrections and given credit for time served, along with a recommendation for boot camp. Smith appeals.
At the hearing and at trial, Charles Hebert, a witness to the crime, testified that on March 26, 2002, he was in his backyard painting when he twice heard loud noises. He walked to the side of the house where he saw someone trying to get *122 into his son's car. Hebert testified that when the intruder opened the car door, which was locked, the alarm went off. When Hebert saw the suspect, the suspect was outside of the car with his arm in the door. Hebert then screamed at this intruder, at which time the suspect turned around, looked at the witness, and ran off. Hebert testified that he was approximately 30 feet away from the intruder, that he saw Smith's face clearly for approximately 10 to 20 seconds, and saw him smash the window.
Hebert testified that after Smith ran, he called the police. When the police arrived, he gave a description of the individual who was breaking into the car, that of a black male, wearing black pants, a white shirt, and a hat. The officer left to search the area, and Hebert testified that he remained at home until the officer came back to his house, saying he had seen someone who fit the description. Hebert testified that he followed the officer to the area where the suspect had been seen, and at that time one of the three men on the scene took off running. After he was caught, Hebert identified the man who ran, Smith, as the burglar.
Deputy Brent Coussou, a road deputy with the Jefferson Parish Sheriff's Office, testified that on March 26, 2002 he investigated an automobile burglary. The deputy testified that he was dispatched to Charles Hebert's home at a little past 11:00 a.m., at which time Hebert told Coussou that he had seen a black male wearing a white T-shirt, black jeans and a fishing hat attempting to break into his son's car. The deputy testified that after receiving the description he aired the description over the police radio and canvassed the area looking for suspects. After about 15 or 20 minutes, Deputy Coussou saw three black males on Canal Road, walking back toward the victim's residence. The deputy testified that one of the three individuals was wearing a white T-shirt and jeans. Deputy Coussou then returned to Hebert's residence and asked Hebert if he could take a look at the three individuals and identify any of them. After speaking with Mr. Hebert, he returned to the site where he had seen the three individuals and asked them to walk over to his vehicle and place their hands on his vehicle's trunk. Two of the subjects complied while Smith at first walked toward the vehicle. When Hebert arrived in his own vehicle, Smith took off running through a field. After giving chase, Smith was apprehended with the assistance of other deputies. Deputy Coussou testified that subsequent to Smith's arrest, Charles Hebert positively identified him as the perpetrator while Smith was handcuffed near the rear of the deputies' vehicle. The deputy testified that Smith was advised of his rights and transported to the Jefferson Parish Correctional Center. Coussou stated that while Smith was being transported, he spontaneously asked if the man wearing the plaid shirt and baseball cap, Charles Hebert, was the one who identified him as being the person breaking into the car.
On appeal, Smith urges that the trial court erroneously denied his motion to suppress identification because the identification procedure was tainted and suggestive. He also argues that the identification was suggestive because he was the only individual in the group wearing a white T-shirt and black jeans, and that the identification procedure was further tainted because Hebert observed him running from the police and afterwards observed him in handcuffs.
The state argues that the identification is proper because when the crime was committed, Hebert saw Smith for approximately *123 10 to 20 seconds at a distance of 30 feet. The state further argues that Hebert gave a description of Smith and the suspect was observed within 20 minutes. The state points out that after Smith saw Hebert arrive at the scene, he attempted to flee. After he was apprehended, Hebert made a positive identification.
A defendant who seeks to suppress identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure.[1] Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.[2] Even if the identification could be considered suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure.[3]
The United States Supreme Court has set forth five factors to consider in determining if an identification is reliable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.[4] In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification.[5] A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.[6]
One-on-one identifications are generally not favored, but are permissible when justified by the overall circumstances. Such identifications have been found to be admissible when the identification occurred in close proximity to the time of the offense and the suspect is presented for immediate identification.[7] Such a process assures reliability and fosters prompt release of innocent suspects.[8]
We have previously held that an identification procedure was not suggestive because the defendant was alone in the backseat of a police car and in handcuffs at the time he was identified.[9] There, the victims were confronted with the defendants approximately 30 to 45 minutes after the robbery. One victim identified the defendant as the man who robbed her as soon as she saw him in the back of the police car, and that none of the police officers on the scene suggested to her that the defendant was the robber. This Court reasoned *124 that, even if the identification was suggestive, the identification did not present a substantial likelihood of misidentification.[10]
In the present case, Charles Hebert testified both at the suppression hearing and at trial that he observed Smith from approximately 30 feet away on a well-lit sunny day. He and Smith looked at each other face-to-face for approximately 10 to 20 seconds before Smith took off running. As to his degree of attention, Hebert testified that the perpetrator was a black male wearing a T-shirt, black jeans and a fishing style hat. Smith, at the time he was stopped, was wearing a white T-shirt, black jeans and a black and white bandana but no fishing hat as described by Hebert.
Hebert was adamant in his identification of Smith as the individual who broke into his son's car, and testified that there was no doubt in his mind that Smith was the perpetrator of the crime.
The testimony of Deputy Coussou evidenced that approximately 15 to 20 minutes after arriving on the scene of the call he spotted three individuals one of which was wearing a white T-shirt and black jeans. The time between when Hebert initially saw Smith and the confrontation was approximately 30 to 45 minutes. This court has previously held thirty to 45 minutes to be a relatively short period of time.[11]
Applying the above facts to the law, we find that the identification was not suggestive, nor was there a substantial likelihood of misidentification. We find that the trial judge correctly denied Smith's motion to suppress identification. This assignment of error is without merit.
Smith also asserts as error that the evidence was insufficient to support the jury's verdict because the tainted identification was insufficient to identify him as the perpetrator. He also argues that the state did not prove he entered the vehicle to commit a theft therein, and that the only evidence in that regard was the inconsistent testimony of Mr. Hebert.
In addition to the testimony detailed hereinabove, Jeremy Edwards, the son of Charles Hebert and owner of the Nissan Sentra, testified at trial that he did not give Smith permission to enter his vehicle. Edwards also testified that his car had an alarm system.
Smith, testified that, on March 26, 2002, at approximately 11:00 a.m. he was at his mother-in-law's house. He also testified that on that date he was wearing a white T-shirt, black pants and a white and black bandanna, but that he had never owned a fishing hat. Smith testified that he was standing in front of Treval Brooks' house when the deputy first passed by. He, Brooks, and another individual were walking when the sheriff's deputy stopped the three of them. The deputy asked them to put their hands on the car. Smith testified that he began walking off at which point the deputy got in his car, reversed the car and squealed the tires, at which point Smith began to run. Smith testified that he was later apprehended and made to stand in front of someone to be identified. He stated that he had never been to the victim's address, that he did not break into the car, and that he had never seen Hebert before.
On cross-examination Smith acknowledged that he was on two and one-half years of probation for possession of cocaine.
The constitutional standard for testing the sufficiency of the evidence, enunciated *125 in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[12]
In the present case Smith was convicted of simple burglary. Simple burglary is defined in LSA-R.S. 14:62 as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60".
Entry is accomplished whenever any part of defendant's person passes the line of the threshold. It is sufficient that any part of the person intrudes, even momentarily, into the structure.[13] The requisite intent required by R.S. 14:62 is specific intent.[14] Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused.[15] The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard.[16]
Charles Hebert testified at trial that Smith opened the door of the car, which caused the alarm to be activated, and further observed Smith with his arm inside of the vehicle. Smith contends that Hebert's testimony was inconsistent because he did not inform the police at the time of the crime that Smith's arm was ever inside of the vehicle.
By finding Smith guilty of simple burglary, the jury obviously believed Mr. Hebert's testimony and inferred from the circumstances that Smith had entered into the Hebert vehicle without authorization and with the intent to commit a theft therein. It is not the function of the reviewing court to assess the credibility of witnesses or to re-weigh the evidence.[17]
*126 Smith also argues that the state failed to prove that he had the specific intent to commit a felony or theft inside the car. At trial, Hebert testified that he heard two loud noises, saw Smith's arm inside of the vehicle and heard the alarm Charles Hebert's testimony, summarized above, and Jeremy Edwards' testimony that the 2000 Nissan Sentra did not belong to Smith and that Smith did not have permission to enter the vehicle makes it difficult to imagine any hypothesis that does not include the specific intent to commit a felony or theft therein.[18] This assignment of error is without merit.
The record was reviewed for errors patent.[19] Smith notes in brief that he was not arraigned on the amended bill of information. On the morning of trial, the state amended the bill of information to charge defendant with simple burglary in violation of LSA-R.S. 14:62 to which defense counsel objected, not to the failure to be arraigned on the amended bill of information but rather to the state amending the bill the morning of trial. LSA-C.Cr.P. art. 555 provides:
Any irregularity in the arraignment, including failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
Because the defendant did not object to the failure to arraign him on the amended charge, the issue is waived.[20] Additionally, the commitment/minute entry does not indicate that the jury was sworn as required by LSA-C.Cr.P. arts. 788 and 790. However, no mention of jury irregularities was raised in the trial court or on appeal. Therefore, we do not consider that issue.[21]
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Prudholm, 446 So.2d 729, 738 (La. 1984); State v. Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559, writ denied, 01-118 (La.11/21/01), 802 So.2d 626.
[2] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
[3] State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
[4] Manson v. Brathwaite, supra.
[5] State v. Higgins, 01-368 (La.App. 5 Cir. 10/18/01), 800 So.2d 918; State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164.
[6] State v. Clennon, supra.
[7] State v. Robinson, 404 So.2d 907, 909-910 (La.1981); State v. Johnson 01-0842 (La.App. 5 Cir. 2/13/02), 812 So.2d 106.
[8] Id.
[9] State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
[10] See also State v. Jackson, 517 So.2d 366 (La.App. 5 Cir.1987).
[11] See State v. Winfrey, supra; see also, State v. Jackson, supra.
[12] State v. Williams 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14; writ denied 2001-KH-0532 (La.11/21/01), 802 So.2d 630, citing State v. Ruffin, 96-226 (La.App. 5th Cir.8/28/96), 680 So.2d 85, and State v. Burrow, 565 So.2d 972 (La.App. 5th Cir.1990), writ denied, 572 So.2d 60 (La.1991); other citations omitted.
[13] State v. Petty, 99-1307 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301.
[14] Id.
[15] State v. Petty, supra.
[16] Id.
[17] State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20; State v. Batiste, 96-1010 (La.App. 5th Cir.1/27/98), 708 So.2d 764.
[18] See State v. Petty, supra.
[19] State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App.5 Cir.1990).
[20] See, State v. Hidalgo, 95-319 (La.App.5 Cir.1/17/96), 668 So.2d 1188.
[21] State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 752, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.