777 So.2d 584 (2000)
STATE of Louisiana
v.
Herbert SMITH.
No. 2000-KA-0523.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 2000.
*585 Harry F. Connick, District Attorney of Orleans Parish, Val M. Solino, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judges BYRNES, PLOTKIN, and MURRAY.
PLOTKIN, Judge.
Herbert Smith was convicted of aggravated battery, a violation of La.R.S. 14:34, and was sentenced to life imprisonment as a third felony offender. On appeal, defendant asserts three assignments of error. We affirm for the reasons below.

STATEMENT OF THE CASE
On August 12, 1999, defendant was charged by bill of information with attempted second-degree murder, a violation of La.R.S. 14:(27)30.1. At his arraignment on August 18, 1999, he pled not guilty. On August 25, 1999, the court found probable cause and denied the defense motion to suppress the statement. On September 9, 1999, a twelve-member jury convicted him of aggravated battery. On November 9, 1999, the court sentenced the defendant to ten years at hard labor with credit for time served. Thereafter, the State filed a multiple bill of information to which the defendant entered a plea of not guilty. On November 23, 1999, the court adjudicated the defendant a third felony offender, vacated his original sentence, and sentenced him pursuant to La.R.S. 15:529.1 to life imprisonment at hard labor with credit for time served. This appeal followed.

STATEMENT OF FACT
Terry Smith, the victim and the defendant's nephew, testified that on July 7, 1999, he and the defendant lived with the victim's aunt and uncle on Dorgenois Street. On that afternoon, he and the defendant argued over money that the defendant allegedly owed to him. At that point, "Noo" and Luther, two of the victim's friends, approached the victim and the defendant and offered to sell the defendant *586 drugs. The defendant removed five dollars from his pocket, and "Noo" and Luther snatched it and escaped on a bike. The victim and the defendant pursued, but were unable to catch them. The victim then demanded that the defendant pay him the five dollars that he allegedly owed to him. The two continued to argue over the money, and the confrontation soon escalated into a fistfight. The victim took off his shirt and demanded that the defendant pay him his money. The victim swung at the defendant, they each threw a few punches, and then the defendant pulled a box cutter from his pocket, and seriously cut the victim's mid-section. At that point, the victim abandoned the fight and sought help from his friend, Amanda Davis, who called an ambulance and applied a towel to the wound. When the ambulance failed to arrive, a friend drove the victim to University Hospital. The doctors at University Hospital told him he needed major surgery, and transferred him by ambulance to Charity Hospital, where he remained for three days following surgery.
Dr. Brett Siegrist, a general surgery physician at Charity Hospital, attended the victim upon arrival at the hospital. Dr. Siegrist described a large slash wound just below the victim's ribs on his left side. The doctor noted that every time the victim would yell or cough, some of his intestines would protrude from the gash. The victim underwent an exploratory laparotomy to rule out damage to his abdominal organs. The doctor used internal sutures and approximately thirty external staples to close the wound.
On July 7, 1999, Detective Tim Allen responded to a call reporting a stabbing in the 500 block of South Dorgenois. The detective did not see the victim upon arriving at the scene but spoke with a witness, Amanda Davis. Based on information developed at the scene, he arrested the defendant. Det. Allen read the defendant his rights, which the defendant acknowledged that he understood. The defendant told Det. Allen that he had acted in self-defense because the victim armed himself with a broken bottle. He also said that he threw the box cutter in some weeds behind his apartment building, however, a search of the area did not produce the cutter. Det. Allen searched the trashcan into which the defendant said the victim threw the broken bottle but did not find a bottle. The defendant was transported to the police station where he gave a taped statement.
In his statement, the defendant recounted that he and the victim had gotten into an argument over money. While they were arguing, two of the victim's friends grabbed money from him. After that, his argument with the victim escalated into a fistfight. When the victim armed himself with a broken bottle, and began to swing at him, the defendant grabbed a box cutter from his pocket, and cut the victim once in the mid-section. The victim dropped the broken bottle in a nearby trashcan, and asked a friend to call an ambulance. The defendant threw the box cutter into an adjacent lot.
Amanda Davis testified that she knows both the victim and defendant, and that on the day of the incident, she heard the pair arguing in the alley. She saw the victim backing out of the alley as he continued to argue with the defendant. When the defendant continued his advance toward the victim, the victim struck the defendant once across his face. The defendant swung at the victim three times with an object he held in his hand. On the third swing, the defendant cut the victim, and she could see the victim's intestines protruding from a wound in his mid-section. She ran to assist the victim and called an ambulance. The victim was unarmed. She did not see the incident between the defendant and "Noo" and Luther.

ERRORS PATENT
A review of the record reveals an error patent with regard to defendant's sentence. The trial court failed to specify that the life sentence was to be served without benefit of parole, probation, or *587 suspension of sentence as required by La. R.S. 15:529.1 A(1)(b)(ii). The sentence therefore is illegally lenient. However, because this is an error favorable to defendant and the State has not complained, the illegally lenient sentence cannot be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95), 657 So.2d 562, 567. There are no other errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment, the defendant contends that the evidence does not support his conviction of aggravated battery. He argues that the State did not disprove he acted in self-defense.
The proper standard for appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326, 329 (La. App. 2 Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Owens, 30,903 (La.App. 2 Cir.9/25/98), 719 So.2d 610, 614, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
The defendant was charged with attempted second-degree murder, however, the jury convicted him of aggravated battery. Battery is the intentional use of force or violence on the person of another. La.R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La.R.S. 14:34. In the absence of qualifying provisions, the term "intent" refers to "general criminal intent." La.R.S. 14:11. An aggravated battery conviction requires proof of only general criminal intent or showing that the defendant in the ordinary course of human experience, must have adverted to prescribed criminal consequences as reasonably certain to result from the defendant's act or failure to act. La.R.S. 14:10(2); State v. Howard, 93-74 (La.App. 3 Cir.11/2/94), 649 So.2d 489, 491, writ denied, 94-2944 (La.3/17/95), 651 So.2d 266.
The defendant admitted that he and the victim were engaged in an argument over money. He also admitted to the investigating officers that he armed himself with a box cutter and began to swing at the victim. The injury, therefore, was a reasonably certain consequence. Nevertheless, the defendant contends that the victim was the aggressor and was armed with a broken bottle. The defendant claims he acted in self-defense and that the State failed to disprove that his action was justified.
The statutory defense of justification is a codification of the legal doctrine of necessity, which generally provides that the existence of extenuating circumstances will defeat criminal culpability. See State v. Recard, 97-754, pp. 5-7 (La.App. 3 Cir.11/26/97), 704 So.2d 324, 327-29, writ denied, 97-3187 (La.5/1/98), ___ So.2d ___, 1998 WL 234688, and authorities cited therein. As the Third Circuit has pointed out, this doctrine has been applied in circumstances other than those enumerated in La.R.S. 14:18, Recard at 6-7, 704 So.2d at 328, and has been recognized as providing a defense in any case in which it is not expressly prohibited. State v. Blache, 480 So.2d 304, 308 (La.1985). This is in accord with the language of the first paragraph of La.R.S. 14:18, which specifies that the defense of justification is applicable to any crime, including:
* * *
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great *588 bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed....
In State v. Fluker, 618 So.2d 459, 462 (La.App. 4 Cir.1993), this court determined that the State must disprove a claim of justification. In a non-homicide situation, the defense of justification requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; and (2) a subjective inquiry into whether the force was apparently necessary. Id.
In this case, Amanda Davis testified that she witnessed the altercation between the defendant and the victim and described it as follows:
A. They was [sic] coming out of the alley and Herbert was walking towards Terry, Terry was backing up towards the street. They was fussing. And Terry was telling him, "Unc, you're wrong, you're wrong, you're wrong," and so Terry hit him, Herbert had an object in his hand and he swung at him the first time and he swung at him the second time, and the third time he caught him across here [indicating].
Q.... did Terry Smith have anything inside of his hands?
A. No, sir.
Ms. Davis' testimony indicates that the victim was unarmed and backing away from the defendant in an attempt to retreat from the altercation; however, the defendant continued to approach the victim, swinging the box cutter until he hit his mark. The State negated the defendant's justification defense.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In a second assignment, the defendant argues that the trial court erred in adjudicating him a third felony offender. More particularly, he claims the State produced insufficient evidence of his identity.
The State multiple billed the defendant on the basis of a 1998 conviction for possession of cocaine and a 1997 conviction for simple burglary of an automobile.
La.R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact, and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant was the same person convicted of that felony. State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 539, writ denied, 97-1637 (La.12/12/97), 704 So.2d 1180. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326, writ denied, 1999-2642 (La.3/24/00), 758 So.2d 143.
At the multiple bill hearing, the State presented the testimony of Officer Terry Bunch, a custodian of arrest registers for the NOPD, and expert in the taking and analysis of fingerprints. Officer Bunch testified that he took the defendant's prints prior to the multiple bill hearing, and identified State's exhibit 1 as the card containing those fingerprints. He then compared the prints on State's exhibit 1 to the fingerprints on State's exhibit 5, the certified copy of arrest register for the defendant's 1997 conviction for simple burglary of an automobile. Officer Bunch concluded that the fingerprints on the arrest register matched the prints on State's exhibit 1. Next, the State offered exhibit 2, a certified copy of the 1998 bill of information charging the defendant with possession of cocaine. Although the bill of information contained fingerprints, Officer Bunch testified that the fingerprints were not suitable for identification. However, *589 comparing the vital information on State's exhibit 3 arrest register with State's exhibit 5 arrest register, the information was identical as to the defendant's name, date of birth, B of I number, FBI number and FPC number. Hence, the State was able to prove the defendant's identity as to the possession of cocaine conviction.
In State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477, the Fifth Circuit held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records was sufficient to prove that the defendant was the person convicted of the prior offenses. By comparing defendant's in-court fingerprints with the fingerprints on State's exhibit 5, the State proved the defendant's identity as to the simple burglary of an automobile.
As to proof of the defendant's identity relative to the possession of cocaine conviction, this court has analyzed facts similar to those presented here to determine whether the State proved beyond a reasonable doubt that a defendant was convicted of a predicate offense. In State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 326, the fingerprints on the bill of information of a predicate conviction were not suitable for identification; however, the fingerprints on the arrest register matched those of the defendant. The State was able to match the arrest register with the certified copy of the predicate conviction through the defendant's name, date of birth, date of offense, case number and complainant's name. In addition, defendant's name, date of birth, social security and bureau of identification number were the same as the person who pled guilty to the predicate conviction. The court held that the State met its burden in proving that the appellant was the same person convicted of that predicate offense.
In this case the State proved the defendant's identity as the person who committed the predicate offenses.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
In a third assignment, the defendant contends his life sentence as a third felony offender is constitutionally excessive.
Defendant was sentenced to life imprisonment pursuant to La.R.S. 15:529.1(A)(1)(b)(ii) which provides:
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant's third conviction was for aggravated battery, a crime of violence as defined by La.R.S. 14:2(13). Furthermore, one of his predicate convictions was for possession of cocaine, a violation of the Uniform Controlled Dangerous Substances Law. Therefore, defendant received the mandatory life sentence as a third felony habitual offender under La.R.S. 15:529.1(A)(1)(b)(ii).
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, *590 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741.
Recently, the Louisiana Supreme Court in State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, mandated that the guidelines set forth in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, govern the review of mandatory minimum sentencing under an excessive sentence claim.
In Lindsey, the Court stated:
"[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations."
Id. at p. 5, 770 So.2d at 343. (quoting Johnson, 709 So.2d at 676-77).
The Court further stated that in departing from the mandatory minimum sentence, the court should examine whether the defendant has clearly and convincingly shown there are exceptional circumstances to warrant the departure:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting Johnson, 709 So.2d at 676 (citing State v. Young, 94-1636 at pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurrence))).
[I]t is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.
Johnson, 709 So.2d at 677.
Under the Habitual Offender Law, a defendant with more than one felony conviction is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law. Such a multiple offender is subjected to a longer sentence because he continues to break the law.
The only arguments the defendant makes for claiming that his sentence is excessive is that the dispute was between him and a younger family member, both under the influence of alcohol.
A review of the record reveals that defendant's criminal record consists of fifteen felony arrests, with four convictions; seventeen misdemeanor arrests, with five convictions; and thirteen municipal arrests, with four convictions. In 1975, the defendant was convicted of possession of stolen property and possession of a sawed-off shotgun, for which he received sentences of two years in the Department of Corrections and four years in a federal penitentiary, respectively. In 1996, he was convicted of simple burglary and sentenced to two years in the Department of Corrections.
The defendant is classified as a career criminal. Previous sentences have not deterred him from pursuing a life of crime. He is a forty-nine year old fourth offender with a very limited work history of only two recorded employers. At least three of his arrests were for drug offenses and four *591 of his convictions were for illegally carrying a weapon.
Considering the defendant's extensive criminal record and propensity for crimes of violence, he fits the profile of the recidivist the Habitual Offender Law was enacted to contain. Defendant has not presented evidence to support a downward departure from the mandatory sentence. His life sentence as a third felony offender is not excessive.
This assignment is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.