828 So.2d 6 (2002)
STATE of Louisiana
v.
Terry WOODS, a/k/a Alphonse Desmond.
No. 2000-KA-2712.
Court of Appeal of Louisiana, Fourth Circuit.
May 29, 2002.
Opinion on Denial of Rehearing September 11, 2002.
*7 Harry F. Connick, District Attorney, William L. Jones, III, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and JUDGE DAVID S. GORBATY).
ARMSTRONG, Judge.
STATEMENT OF CASE
On December 19, 1996, the State indicted the defendant, Terry Woods, aka Alphonse *8 Desmond, with one count of second-degree murder (count 1), a violation of La. R.S. 14:30.1 and one count of attempted first-degree murder (count 2), a violation of La. R.S. 14:27(30). At his arraignment on January 6, 1997, the defendant entered a plea of not guilty. At the conclusion of the trial on June 11, 1998, the jury was unable to reach a verdict on count 1; however, on count 2, the jury found the defendant guilty of attempted second-degree murder. On November 25, 1998, the court adjudicated the defendant a third felony offender and sentenced him to life imprisonment. On January 28, 1999, the defendant entered an Alford[1] plea to manslaughter, reserving his right to withdraw the plea should the jury verdict on count 2 be reversed. The court sentenced the defendant to forty years, with credit for time served on his plea to manslaughter. On appeal, defense counsel asserts two assignments of error. The defendant, in his pro se brief, assigns two errors.
STATEMENT OF FACT
At approximately 6:00 p.m. on October 31, 1996, as Simone Alfred and the victim, Keshawn Walker, stood conversing on the corner of Third and Galvez Streets, a male suspect approached the victim and shot him in the head. Sharon Winchester, who lived around the corner on Miro Street, heard the gunshots and flagged down William Mims, a reserve officer with the NOPD. While Ms. Winchester and Officer Mims spoke, a man ran past them, holding a gun in his pants pocket. Officer Mims pursued the suspect by car, identified himself as an officer, and ordered the suspect to stop. When Officer Mims exited his vehicle, the defendant began shooting at him.
Officer Walter Zscheidrich responded to a call of "police officer in shoot out" at the intersection of Miro Street and Washington Avenue. When he arrived on the scene, Officer Zscheidrich spoke with Officer Mims, who told officers that his assailant was wearing a white shirt and pants, and fled into a nearby alley. NOPD officers searched the area, and found the shirtless defendant lying on the ground in an adjacent church alley. The officers also found the defendant's bloodstained pants on top of a nearby shed. Minutes after the shoot out, Officer Mims positively identified the suspect who shot at him. Approximately one month after the shooting, Ms. Alfred identified the defendant, Terry Woods, aka Alphonse Desmond as the man who shot and killed the victim. Three days after the homicide, officers recovered the murder weapon from a hole in the wall of the church adjacent to the alley in which the defendant was apprehended.
Dr. Paul McGargy, the Coroner's Office forensic pathologist, testified that the victim died of three bullet wounds one to his head, neck and shoulder. Dr. McGargy retrieved the bullets during the autopsy and also discovered three packets of cocaine in the victim's mouth.
ERRORS PATENT
A review of the record for errors patent reveals two as to sentencing. First, the docket master and the corresponding minute entry for November 25,1998, does not indicate that the defendant was sentenced to life imprisonment for his attempted second degree murder conviction; however, the November 25, 1998, multiple bill transcript does. Where there is a conflict between the minute entry and the trial transcript, the transcript controls.
*9 State v. Fenner, 94-1498 (La.App. 4 Cir. 11/16/95), 664 So.2d 1315.
Second, after adjudicating the defendant a third felony offender for his attempted second degree murder conviction, the judge sentenced him to life imprisonment. However, in doing so, the judge failed to deny him the benefit of parole, probation or suspension of sentence pursuant to La. R.S. 15:529.1A(2)(a)(ii). In failing to do so, the judge rendered an illegally lenient sentence. Heretofore, this Court has followed the dictates of State v. Fraser, 484 So.2d 122 (La.1986), which held that a sentencing error favorable to the defendant that is not raised by the State on appeal may not be corrected. However, the legislature recently enacted La. R.S. 15:301.1[2], which addresses those instances where sentences contain statutory restrictions on parole, probation or suspension of sentence. Paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court. Moreover, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the Supreme Court has ruled that paragraph A self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this court need take no action to correct the trial court's failure to specify that the sentence be served without benefit of parole, probation or suspension of sentence. The correction is statutorily effected.[3] La. R.S. 15:301.1A.
COUNSEL ASSIGNMENT OF ERROR NUMBER 1 AND PRO SE ASSIGNMENTS 1 AND 2
In this assignment, counsel argues that the evidence was insufficient to support the defendant's conviction of attempted second-degree murder, in that the State failed to produce evidence that the defendant had the specific intent to kill Officer Mims.
*10 The standard for appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. While a conviction for second degree murder can be obtained by showing that the defendant had the specific intent to kill or inflict great bodily harm, a conviction for attempted second degree murder requires a showing that the defendant had the specific intent to kill and committed an act tending to accomplish that purpose. La. R.S. 14:27; State v. Pittman, 604 So.2d 172 (La.App. 4 Cir. 1992); State v. Banks, 496 So.2d 1099 (La. App. 4 Cir.1986); State v. Strother, 362 So.2d 508 (La.1978).
Specific criminal intent exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1). Intent may be proven either by direct evidence or can be inferred from the circumstances of the case. State v. Pittman, 604 So.2d at 175; State v. Govan, 593 So.2d 833 (La. App. 4 Cir.1992).
This court relied on the above reasoning in finding that when evidence is presented that a shot was fired in the direction of a police officer, attempted first degree murder of a police officer is proven. State v. Pittman, 604 So.2d 172 (La.App. 4 Cir. 1992). See also State v. Davis, 26,682 (La.App. 2 Cir. 3/1/95), 651 So.2d 323; State v. Turner, 626 So.2d 890 (La.App. 3 Cir.1993).
In this case, Officer Mims testified that the defendant fired upon him at the intersection of Washington Avenue and Miro Street. Officer Mims returned fire until he ran out of ammunition, forcing him to run for cover. He further testified that the defendant pursued him as he ran, continuing to shoot at him.
Officer Bryan Winbush, the ballistics expert, testified that he tested four nine-millimeter casings retrieved from the Miro Street/Washington Avenue scene, and determined that the casings were fired from the murder weapon, which was the weapon recovered adjacent to the defendant's hiding place. It is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court's function is to determine the constitutional sufficiency of the evidence presented. State v. Johnson, 619 So.2d 1102, 1109 (La.App. 4 Cir. 5/13/93), writ denied, 625 So.2d 173 (La.10/1/93). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404 (La.App. 4 Cir.1994), 639 So.2d 312; State v. Garner, 621 So.2d 1203 (La. App. 4 Cir.1993), writ denied, 627 So.2d 661 (La.1993). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La. App. 4 Cir.1989); Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. Id. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). Viewing the totality of the evidence *11 in the light most favorable to the State, the jury could have found the defendant guilty of attempted second-degree murder. This assignment is without merit.
COUNSEL ASSIGNMENT OF ERROR NUMBER 2
By his second assignment, counsel contends the trial court erred by finding the defendant to be a third offender. Specifically, he argues he could not be considered to be a third offender because the "cleansing period" between the first and the second offenses had lapsed at the time he committed the second offense. Thus, he argues, the most he could be adjudged to be was a second offender. He acknowledges that the pertinent "cleansing period" between the second offense and the present offense is ten years, but he contends that because the applicable "cleansing period" at the time of the second offense was only five years and because he could not have been found to be a second offender at that time, that first offense cannot be used in the present multiple offender adjudication.
In support, he cites State v. Everett, 99-1963 (La.App. 4 Cir. 9/27/00), 770 So.2d 466, where this court found the defendant could not be adjudicated a third offender under similar circumstances. In Everett, the defendant was convicted in 1999 of aggravated battery. His prior convictions were a guilty plea in 1993 to felony theft and a 1984 guilty plea to being a convicted felon in possession of a firearm. On appeal, he argued that the 1984 conviction could not be used to adjudicate him a third offender because the application of the ten-year cleansing period violated the ex post facto clause. He argued that because at the time of the 1993 conviction the 1984 conviction had been "cleansed" and he could not have been multiple billed at that time, the 1984 conviction could not be revived by the 1995 increase in the cleansing period to be used in the 1999 multiple bill proceeding. This court distinguished State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, which involved a DWI second offense, on the ground that at the time Rolen committed the second offense, he had been placed on notice that the first offense, occurring more than five but less than ten years prior to second offense, could be used to enhance the second offense. This court stated:
In other words, Rolen, a citizen, was put on notice of the expanded cleansing period before he committed his second DWI offense. After the law changed, he was presumed to know that he would not be treated as a first offender if he committed a second DWI offense five years and a day after his first offense. He now had to wait 10 years and a day. Although Rolen received notice of the change in the law more than five years after the first offense, the notice was timely for him to conform his conduct when the cleansing period was expanded to 10 years.
In this case, Everett conformed his conduct to the then existing cleansing period. He waited more than five years before he committed his second felony offense. Everett's case is thus critically different from the defendant in Rolen. For, at the time he committed the second (the 1993) offense, Everett "had [not] been placed on notice by the state that [the cleansing period] had changed" and that "he could no longer rely on the five-year cleansing period to abate the collateral consequences of his prior [the 1983] offense for any future violation." In this case, "[t]he Ex Post Facto Clause required ... more." Rolen, supra. In effect, Everett had complied with the Habitual Offender Law in effect at that time.

*12 Under these facts, using an extended cleansing period, enacted after the prior offenses (i.e. ex post facto), to link said prior offenses would violate the ex post facto clause.
State v. Everett, 99-1963 at pp. 19-20, 770 So.2d at 476-477 (emphasis supplied). This court then held that although the 1993 plea could be used, the 1984 plea could not be used. This court vacated the third offender adjudication and sentence and remanded the case for resentencing as a second offender.
Subsequent to the filing of counsel's brief in this case, the Supreme Court reversed this court's ruling in Everett. State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272. The Court noted that the term "cleansing period" was a misnomer in that the time limitations set forth in La. R.S. 15:529.1 did not provide a prescriptive period for the use of prior convictions. The Court stated:
The purpose of the Habitual Offender Law is to deter and punish recidivism. State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677. To this end, subsection (A) of the statute sets out enhanced penalties to be imposed on persons who have been convicted of a felony and thereafter commit subsequent felonies. The statute provides the penalties after identifying the number of felonies committed by stating, for example, "If the second felony is such that...," and "If the third felony is such that...."
Subsection (C), however, provides that "[t]his Section," i.e., the Habitual Offender Law, "shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions ... and the time of the commission of the last felony for which he has been convicted." We interpret this subsection to mean that in order to determine whether the Habitual Offender Law applies at all to enhance a defendant's sentence after conviction of a subsequent felony, we must look to that time period between defendant's discharge from being subject to penitentiary confinement for the previous conviction [footnote omitted] and the commission of the underlying felony. If that time period encompasses more than ten years, then the Habitual Offender Law is inapplicable to defendant's case and he cannot be sentenced as anything other than a first offender. If, on the other hand, ten years or less have elapsed between the defendant's discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony, then the Habitual Offender Law is applicable and subsection (A) is employed to determine the appropriate sentence. Under subsection (A), defendant's felony convictions are simply counted, either second, third, or fourth or subsequent, and the applicable penalty is imposed. As defendant himself correctly recognizes, subsection (C) is concerned only with that period of time between the expiration of the sentence for the last previous felony conviction and the commission of the last felony. It is only that time period which the legislature has made relevant to determine whether defendant will be sentenced under the Habitual Offender Law.
Everett, at pp. 7-8, 816 So.2d at 1276-77. The Court cited State v. Broussard, 213 La. 338, 34 So.2d 883 (1948), which interpreted the predecessor to La. R.S. 15:529.1 and found that the time limitation given in the statute (five years) applied to the time between the commission of the present felony and the last prior one. The Everett Court further re-interpreted Broussard *13 essentially to reject the long-held assumption that each prior offense must "link up" to the next offense within the time limitation set forth in the statute. The Court stated:
Thus, although the Broussard court pointed out in dicta that there was no intervention of five years between any of the defendant's four felonies, it did not hold that defendant could not have been adjudged a four offender if such intervention had occurred.
Everett at pp. 10-11, 816 So.2d at 1278.
The Court further rejected the argument that the application of the 1995 amendment to La. R.S. 15:529.1, which increased the time limitation to ten years, violated the ex post facto clauses of the United States (Art. I, § 10) and Louisiana (Art. I, § 23) Constitutions. Citing State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, a DWI recidivism case, the Court stated:
These legislatively-defined periods can be enlarged or even eliminated without requiring an individual to defend past acts for which he has already been convicted and punished. Id. at p. 5-6, 662 So.2d at 449. The enhanced sentence for a habitual offender convicted of a new felony punishes the second or subsequent offense, not the first. State v. Walker, 416 So.2d 534, 536 (La.1982); State v. Guidry, 169 La. 215, 226, 124 So. 832, 836 (1929). A defendant therefore acquires no "vested right" in any offender status once the legislatively-defined period of inapplicability is triggered and the legislature may change defendant's status based on his prior record at any time before commission of the underlying offense.
Everett at p. 14, 816 So.2d at 1280.
The Court then applied this language to the circumstances of the case, finding that because less than ten years had elapsed between the second conviction and the present conviction, the defendant could be found to be a third offender. The Court found that even though the defendant could not have been adjudicated a second offender when he was sentenced on the second conviction because the applicable time period under La. R.S. 15:529.1 was five years, he "did not acquire any `vested right' in not having [his first conviction] available to enhance sentences for subsequent felony convictions." Id. at p. 15, 816 So.2d at 1281. The Court noted that although the defendant "received the benefit of being felony-free more than five years after and he was not adjudicated a multiple offender [at the time of the second offense,] ... by the terms of La. R.S. 15:529.1, once defendant committed a subsequent felony less than ten years later, the terms of the Habitual Offender Law applied to him and all his felony convictions could be considered by the trial court in imposing a sentence under that Law." Id. at p. 16, 816 So.2d at 1281.
In the instant case, the defendant committed the present offense in 1996, and his prior convictions were from 1993 and 1982. Clearly, less than ten years elapsed from the present offense and his last prior conviction. Even if the Court's opinion in Everett can be read to require a link-up of ten years between each conviction and its immediate predecessor, ten years would not have elapsed between the first and second convictions if the defendant served any of six-year sentence on the first offense. Thus, the trial court did not err by adjudicating the defendant as a third offender. This assignment has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 3
In a final assignment, the defendant argues he was denied a fair and impartial *14 trial because the State knowingly elicited perjured testimony from Simone Alfred.
On the night of the murder, Ms. Alfred told police officers she could not identify the killer. Then, about a month later, and after a picture of the defendant appeared in the newspaper linking him to the homicide, Ms. Alfred gave a statement in which she positively identified the defendant as the shooter. The defendant claims this discrepancy proves Ms. Alfred's perjury.
He further argues that Ms. Alfred's perjured testimony tainted the jury's perception as to his guilt to count 2 of the indictment.
Under cross-examination Ms. Alfred explained that her contradiction as to the identify of the shooter was due to shock, fear and disbelief. She told the jury that she was so traumatized by the shooting that she dropped out of school, hid in her house, and refused to talk to family and friends. She also explained that the reason she told the police she could not identify the killer the night of the shooting was because she was ill to the point of fainting from the horror of seeing the victim's wounds and dead body. She reiterated that she recognized the defendant as the killer the night of the shooting, prior to seeing his picture in the paper.
The defense ably explored the inconsistencies in Ms. Alfred's testimony for the jury. The jury also heard Ms. Alfred's explanation for the contradiction, and chose to credit her explanation. It is the jury's function to consider such conflicting statements and apparent motives in weighing the credibility of a witness. See, e.g., State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1083. A trier of fact has great discretion in its determination of the credibility of witnesses, and such determination will not be disturbed unless it is clearly contrary to the evidence. State v. Varnado, 97-2825 (La.App. 4 Cir. 9/22/99), 753 So.2d 850, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 341.
As for the defendant's assertion that Ms. Alfred's testimony prejudiced him as to his conviction on count 2 of the indictment, it should be noted that the defendant was originally charged in count 2 with the attempted first-degree murder of Officer Mims; however, the jury returned the lesser included verdict of guilty of attempted second-degree murder. In light of the overwhelming evidence of the defendant's guilt, it is highly unlikely the jury was prejudiced by Ms. Alfred's testimony. This assignment is without merit.
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.

ON APPLICATIONS FOR REHEARING
JOAN BERNARD ARMSTRONG, Judge.
The application for rehearing filed by the defendant, Terry Woods a/k/a Alphonse Desmond, concerns the assignment of error regarding his conviction for the attempted second degree murder of a reserve police officer who attempted to stop him after the murder for which he was subsequently charged (the jury could not reach a verdict on that count). In his rehearing, the defendant argues this court did not fully consider his sufficiency of evidence assignment, which was entitled in his original brief as: "The Evidence was Insufficient to Prove Specific Intent to Kill". He now contends this court did not address what he considered to be the main thrust of his assignment, that the evidence failed to exclude a reasonable hypothesis of innocence, that he was acting in selfdefense *15 when he shot at the officer, proving he did not intend to kill him.
The defense of justification is set forth in La. R.S. 14:18, which provides in part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:

* * *
(7) When the offender's conduct is in defense of persons or property under any of the circumstances described in Articles 19 through 22.
La. R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where thee force or violence results in a homicide.
As noted by this court in State v. Fluker, 618 So.2d 459, 462 (La.App. 4 Cir. 1993): "In a non-homicide situation, the defense of justification requires a dual inquiry, namely: an objective inquiry into whether the force used was reasonable under the circumstances; and, a subjective inquiry into whether the force was apparently necessary." See also State v. Freeman, 427 So.2d 1161 (La.1983); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir. 1992). In Fluker, this court also held that the State has the burden of proving a lack of justification in a non-homicide case, just as it does in a homicide case. Fluker at 463.[1] See also State v. Smith, XXXX-XXXX (La.App. 4 Cir. 12/20/00), 777 So.2d 584.[2]
Here in the record before this court, the only possible indications the defendant was presenting an argument of self-defense were a few questions to Officer Mims concerning how he was dressed at the time he confronted the defendant. Even if this can be construed as raising the issue of self-defense, Officer Mims' testimony was sufficient to disprove this defense. Officer Mims testified that as he approached the defendant when the defendant appeared to be entering a car, he identified himself as a police officer and told the defendant to drop the gun. At that point, the defendant opened fire on Officer Mims. Officer Mims stated that when he ran out of ammunition when returning the defendant's fire, he ran from the scene, and the defendant "started advancing *16 towards me and he was still shooting." Ms. Winchester, Officer Mims' neighbor who alerted Officer Mims to the unrelated shooting, also testified that Officer Mims identified himself as a police officer when he confronted the defendant, and defendant then fired at Officer Mims. Given this testimony, the jury could easily have found the continued shooting after Officer Mims began running away negated the self-defense theory. The jury could well have believed the State disputed any implication that the defendant did not know Officer Mims was an officer and could have found the State negated any assertion, implied at best, of self-defense. As such, the evidence was sufficient to support the jury's verdict of guilty of attempted second degree murder. This assignment has no merit.
For the forgoing reasons, the defendant's application for rehearing is denied.
REHEARING DENIED.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S.Ct. 160, 167-68, 27 L.Ed.2d 162 (1970)
[2] 1999 LA. ACTS 94, effective August 15, 1999, embodied La.R.S. 15:301.1 which provides:

A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
[3] In light of R.S. 15:301.1, this Court will not recognize the sentencing court's failure to impose statutory restriction of benefits as patent error.
[1] This court so held, even though other courts of appeal in Louisiana have held that as an affirmative defense, the defendant has the burden of showing justification by a preponderance of the evidence. See State v. Wright, 99-1137 (La.App. 3 Cir. 3/1/00), 758 So.2d 301, writ den. State ex rel. Wright v. State, XXXX-XXXX (La.3/9/01), 786 So.2d 118; State v. Barnes, 491 So.2d 42 (La.App. 5 Cir.1986). See also State v. Cheatwood, 458 So.2d 907, 910, fn. 4 (La.1984), where the Court discussed this burden and stated:" It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of offense and to require defendant to prove by preponderance of the evidence the exculpatory circumstances constituting the `affirmative' defense.... The statutory provisions setting forth the state's burden of proof refer only to the requirement that the state prove the elements of the crimenot that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all elements of the offense." (emphasis supplied)
[2] Writ den. XXXX-XXXX (La. 4/12/02), 812 So.2d 663.