984 So.2d 910 (2008)
STATE of Louisiana in the Interest of J.N.
Nos. 2007-CA-1229, 2007-CA-1306.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 2008.
*911 Barry J. Gerharz, Juvenile Regional Services, Inc., New Orleans, LA, for Appellant, J.N.
Keva Landrum-Johnson, District Attorney, Alyson R. Graugnard, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
*912 DAVID S. GORBATY, Judge.
J.N.[1] appeals a delinquency adjudication and disposition wherein he was placed in secure custody of the Louisiana Department of Public Safety and Corrections, Office of Youth Development, for a period of two years. For the following reasons, we affirm.
STATEMENT OF FACTS:
J.N. was arrested May 13, 2006, and charged with simple burglary. The sequence of events leading to the arrest is as follows: NOPD Sergeant Philibert heard a police radio broadcast reporting a crime in the area. He responded to the call and began patrolling the area. He located a woman, later identified as Dawn Eastman, who reported to him that she saw the perpetrator turn down Laurel Street towards Nashville Avenue. Sergeant Philibert then drove onto Laurel Street where he saw two NOPD officers detaining J.N.J.N. was driven back to where Ms. Eastman was located, and she positively identified J.N. as the person she had previously reported to the police for "suspicious behavior." This behavior was later determined to be looking into car windows and trying door handles.
The officers then drove J.N. to the address on Eleanor Street where Eileen Brown had reported her purse stolen from her Chevrolet Suburban. Jenny Brown, Eileen Brown's daughter, identified J.N. as the man who had taken her mother's purse from the vehicle.
In addition to the report from Ms. Brown and Ms. Eastman, Brooke Duncan, a resident of the neighborhood, also called 911 to report a suspicious person in the neighborhood. Mr. Duncan positively identified J.N. as the person he saw in the area.
As he was searching the area for the stolen purse, Sergeant Philibert was approached by a nearby homeowner, who handed him a cell phone and credit cards he had found in his yard, about fifteen feet from where J.N. was apprehended. The neighbor wished to remain anonymous.
PROCEDURAL HISTORY:
In addition to the above witnesses, a representative from the Juvenile Regional Services and J.N.'s drug court case manager, testified at the disposition hearing. Following the hearing, the trial court sentenced J.N. to two years in secure custody, and recommended that he be placed in the STOP[2] program.
This appeal followed.
DISCUSSION:
J.N. makes six assignments of error, the first three of which are evidentiary issues. J.N. argues that the court erred by admitting in-court and out-of-court identifications of him, by allowing the testimony of Ms. Eastman, and by improperly weighing the testimony of Jenny Brown.
J.N. first argues that because of the suggestive nature of the identification process, Jenny Brown's identification of J.N. as the person who took her mother's purse was tainted. J.N. claims that Jenny, an eight-year old, was unduly influenced by the fact that J.N. was removed from the back seat of a police cruiser immediately prior to her identification.
The Supreme Court set forth factors for a court to utilize in determining the admissibility of an identification. *913 Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). The court should consider from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification based on 1) the opportunity of the witness to view the offender at the time of the crime; 2) the witness' degree of attention at the time of the crime; 3) the accuracy of his prior description of the offender; 4) the level of certainty displaced at the confrontation; and 5) the time between the crime and the confrontation. Id.
Relying on Manson, supra, this Court thoroughly discussed out-of court identifications in State v. Holmes, 05-1248 (La. App. 4 Cir. 5/10/06), 931 So.2d 1157:
To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Moreover, a defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that a likelihood of misidentification existed as a result of the identification procedure. State v. Valentine, 570 So.2d 533 (La. App. 4 Cir.1990).
The [Louisiana] Supreme Court has held that even if the identification could be considered suggestive, it is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, 98-1673 (La.9/8/99); 750 So.2d 916, 932. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of the circumstances. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517. If a suggestive identification procedure has been proved, a reviewing court must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification at trial. State v. Martin, 595 So.2d 592, 595 (La.1992).
05-1248, pp. 6-7, 931 So.2d at 1160.
Sergeant Philibert testified concerning the out-of court identification. He stated that Jenny Brown immediately identified J.N. as the person who had taken her mother's purse; the identification occurred less than one hour after the incident. Further, Jenny testified that she watched J.N. as he paced back and forth in front of the vehicle, before he opened the car door and asked Jenny and her sister where there mother had gone.
At the suppression hearing, Jenny again positively identified J.N. as the person who had stolen her mother's purse. In reasons for judgment, the trial court noted that Jenny's testimony was clear and straightforward, despite being uneasy about testifying. She testified in a quiet and grave manner, indicating that she took the proceedings seriously. Her answers were thoughtful and unrushed, and it was clear to the court that Jenny understood the difference between right and wrong.
A reviewing court may consider all pertinent evidence adduced at the trial, as well as any pre-trial motion hearings. State v. Lewis, 04-0227 (La.App. 4 Cir. 9/29/04), 885 So.2d 641, 652. A trial court's determination as to the admissibility of identification will be given great weight, and a reviewing court should not *914 disturb that determination absent an abuse of discretion. Holmes, 05-1248, p. 7, 931 So.2d at 1160, citing State v. Offray, 00-0959 (La.App. 4 Cir. 9/26/01), 797 So.2d 764. Based on the above, we find that the defendant has not shown that there was a substantial likelihood of misidentification by Jenny.
Also in connection with the testimony of Jenny Brown, J.N. argues that the trial court improperly weighed the value of her testimony. According to J.N., the trial court erroneously concluded that it would have weighed an adult's responses to the questions posed differently.
The trier-of-fact, in this case the trial judge, is charged with making credibility determinations. State v. Woods, 00-2712, p. 6 (La.App. 4 Cir. 11/9/00), 828 So.2d 6, 10; State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. It is also the trier-of-fact's duty to weigh the evidence. The trier-of-fact may accept or reject testimony, in whole or in part. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. The trial court clearly accepted Jenny's testimony as credible, and it is not the function of this Court to reassess that credibility call, or to reweigh the evidence. State v. Helou, 02-2302, p. 5 (La.10/23/03), 857 So.2d 1024, 1027; State v. Rosiere, 488 So.2d 965 (La.1986).
J.N. also challenges the admissibility of all of Dawn Eastman's testimony. The trial judge disallowed the testimony of Ms. Eastman regarding events that occurred approximately six weeks prior to the incident in question; however, he allowed her testimony regarding the sequence of events on the day of the arrest. The trial judge reasoned that although Ms. Eastman did not actually see the burglary occur, her testimony did qualify as circumstantial evidence of whether J.N. was more probably than not the person arrested for this crime.
Louisiana Code of Evidence art. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We find no error in the trial judge admitting Ms. Eastman's testimony regarding the events of May 13, 2006.
In his fourth assignment of error, J.N. argues that the incomplete record of the juvenile proceeding deprived him of his right to appeal and review. In this case, appellate counsel was not trial counsel. J.N. urges that the numerous notations of "inaudible" contained in the transcript prevented him from preparing his appeal. As an example of his dilemma, he notes that there is no transcript of closing arguments because the court reporter indicated it was "inaudible."
An incomplete record may be adequate for appellate review. State v. Thomas, 92-1428 (La.App. 4 Cir. 5/26/94), 637 So.2d 1272. We also note that closing argument is not evidence and, therefore, its exclusion from the record does not constitute reversible error.
In State v. Rodriguez, 93-0461 (La.App. 4 Cir. 3/29/94), 635 So.2d 391, voir dire, arguments and jury charges were excluded from the record; however, because the defendant could not show any prejudice based on the missing portions, he was not entitled to relief. This guideline is grounded in the presumption of regularity of judicial proceedings. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 480.
After a thorough reading of the transcript, we find that the occasional "inaudible" notation in the transcript does not render it incomprehensive. All material *915 portions of the transcript are contained in the transcript; the inconsequential omissions do not require reversal. We find no merit to this assignment.
J.N. argues that there was insufficient evidence to sustain an adjudication against him. In a juvenile proceeding, the State bears the same burden of proof as in an adult proceeding, that is, every element of the crime must be proved beyond a reasonable doubt. La. Ch.C. art. 883. An appellate court reviews the facts and evidence and applies the law as it does in an adult proceeding; likewise, the appellate court grants deference to the trier-of-fact that observed the demeanor of the witnesses and was in the best position to determine credibility and the weight to be given the evidence. La. Const. art. 5, § 10(A) and (B); State v. S.B., Jr., 31,264 (La.App. 2d Cir.9/25/98), 719 So.2d 1121.
J.N. asserts that no physical evidence was produced to connect him to the crime. However, the crime of simple burglary does not require proof of possession of stolen goods. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 317. Nor is the owner of the stolen property's testimony essential to prove, in this case, the lack of authority to enter her vehicle. State v. Winslow, 29,888, p. 2 (La.App. 2 Cir. 10/29/97), 702 So.2d 22, 25. The "entry" element of the crime of simple burglary is proved when there is evidence that any part of the defendant's person intrudes, even momentarily, into the vehicle. State v. Smith, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119, 125.
Jenny Brown testified that J.N. opened the door of her mother's vehicle and reached into the front seat to take the purse. The efficacy of Jenny's testimony has already been discussed herein, and thus, we find no error in the trial judge's finding that the element of entry was proved beyond a reasonable doubt.
We address J.N.'s fifth assignment of error last because it addresses the adjudication itself. He argues that the trial judge abused his discretion by committing J.N. to the Department of Corrections for two years, with a recommendation that he be placed in the STOP program.
After reading the disposition hearing record, we do not find that the trial judge abused his discretion. Ms. Ardell Freeman, J.N.'s drug court case manager, testified that she considered J.N. to be non-compliant. In her opinion, he did not participate in the program to the best of his ability. She testified that there was a possibility that J.N. could go to Alexandria for treatment, but if he chose not to, there was nothing more that drug court could do for him. On cross-examination, Ms. Freeman testified that although J.N. did make his court appearances, his attendance for treatment was sporadic at best.
Meghan Founce, a youth advocate with Juvenile Regional Services, testified as to a disposition plan she prepared for J.N. She stated that Cafe Reconcile was eager to have J.N. return to its program.[3] J.N. was enrolled in the Ford Automotive Program at Delgado Community College, and could begin after completing the program at Cafe Reconcile. After completing the Ford program, J.N. would be assisted in finding employment. Concurrent with participation in the two programs, J.N. was to attend GED classes at night.
J.N. argues that he was successfully enrolled in the Ford program, but the record *916 indicates that he had not yet begun the program. To the contrary, the record indicates that J.N. had not successfully participated in the drug court program, and had quit Cafe Reconcile.[4] Considering the above, we cannot say that the trial judge abused his discretion in sentencing J.N. to two years in secured custody, particularly in light of the judge's recommendation that J.N. be considered for the STOP program.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
LOVE, J., dissents.
LOVE, J., dissents.
I respectfully dissent with the majority's finding that the element of entry was proven beyond a reasonable doubt. The state sought to prove this entry with the testimony of Ms. Jenny Brown, who made the identification of the defendant. Ms. Brown testified that J.N. opened the door of her mother's vehicle and reached into the front seat to take the purse.
"One-on-one confrontation identifications are not favored." State v. Chapman, 410 So.2d 689, 709, (La.1981). However, one-on-one identifications between a suspect and victim are permissible when justified by the overall circumstances, such as where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the spot identification or when identification is made shortly after the commission of the crime. State v. Sewell, 35, 549, p. 18 (La.App. 2 Cir. 2/27/02), 811 So.2d 140, 150. Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 113-114, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977).
The likelihood of misidentification violates due process when the totality of the circumstances indicates that misidentification probably occurred. State v. Brown, 40, 769, p. 5 (La.App. 2 Cir. 3/8/06), 923 So.2d 976, 979, (citing, Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Thus, it must be proven that the identification procedure was unduly suggestive and that there is a substantial likelihood of misidentification in addition to the suggestive identification procedure. Sewell, 811 So.2d at 150. An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980).
When assessing the reliability of an identification, or the substantial likelihood of misidentification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Sewell, 811 So.2d at 150, (citing, Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson, 97 S.Ct. at 2253. Further, in determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider *917 pertinent evidence given at the trial. State v. Higgins, 01-368, p. 5 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, 921.
In the matter sub judice, the record does not establish the reliability of the in-field identification. However, the testimony of the witness does establish that the witness may have surmised that the person in custody was the perpetrator because he was in the police car. The colloquy at trial proceeded as follows:
Defense Counsel: If you see someone in a police car you know they've done something bad?
Ms. Brown: Yes.
. . .
Defense Counsel: Did you see him get out of the police car?
Ms. Brown: Yes.
Defense Counsel: And when you saw him get out of the police car you knew he had done something bad?
Ms. Brown: Ah-huh.
In light of the transport of the person in custody to the site of the show-up in a police car coupled with the witness' view that people in a police car have done something bad, it stands to reason that the in-field identification procedure was unduly suggestive and had a corruptive effect. While Ms. Brown made an in-court identification of the defendant at trial, the procedure by which Ms. Brown identified J.N. as the perpetrator at the crime scene station was unduly suggestive and brings into question the accuracy of Ms. Brown's in-court identification and her opportunity to observe the J.N. at the crime scene. Thus, Ms. Brown's testimony relating to the pre-trial identification and the subsequent in-court identification is poisonous fruit of this initially prejudicial and suggestive confrontation.
It is also notable that the one-on-one identification of the defendant was conducted prior to any description of the defendant being provided by the witness. Sergeant Philibert testified that Ms. Brown "didn't give a description" of the defendant prior to the show-up. Ms. Brown was asked twice by the State if she identified J.N. at the initial encounter and she was unable to answer with certainty. A portion of the colloquy at trial went as follows:
State: And you identified him as the person who stole your mother's purse to the police?
Ms. Brown: I don't think so.
. . .
State: Did you ever tell the police that this is the person who stole your mother's purse?
Ms. Brown: I think so.
State: Did you point him out to the police as the person who stole your mother's purse?
Ms. Brown: Ah-huh.
Analyzing the witness' testimony under the Manson v. Brathwaite factors, first, Ms. Brown's opportunity to view the perpetrator at the time of the crime is uncertain. However, she testified that the perpetrator asked her "[w]here's your mom?" and took the purse. Second, Ms. Brown's degree of attention was good, given that she was able to run in the house and tell her mother that a gentleman had stolen her purse after the event transpired. Third, as to the accuracy of the witness' prior description of the criminal, as noted above, the witness gave no description of the perpetrator prior to the in-field identification. Fourth, the level of certainty demonstrated at the confrontation was questionable. Fifth, the length of time between the crime and the confrontation was "under forty, fifty minutes" according to Sergeant Philibert.
*918 After consideration of these factors, and weighing the corrupting effect of the suggestive identification procedure against these factors, the totality of the circumstances do not demonstrate that the identification was reliable. Thus, the out-of-court identification was not properly admissible.
Without this identification, only circumstantial evidence was used at trial to support the facts necessary to constitute the crime of simple burglary. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, 483 So.2d 953 (La.1986).
As the majority states, the "entry" element of the crime of simple burglary is satisfied with evidence that any part of the defendant's person intrudes, even momentarily, into the vehicle. State v. Smith, 02-1018 (La.App. 5 Cir. 3/ 11/03), 844 So.2d 119, 125. Without the witness' identification, the circumstantial evidence does not prove the element of entry "such that every reasonable hypothesis of innocence is excluded." La. R.S. 15:438. The record does not contain ample evidence from which a rational trier of fact could have found that any part of the defendant's person intruded into the vehicle, and therefore, the State has failed to prove the essential elements of the crime of simple burglary beyond a reasonable doubt. Further, after reviewing the evidence presented at trial, in the light most favorable to the prosecution, I do not conclude that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
NOTES
[1] Because J.N. is a juvenile, only his initials will be used herein to protect his privacy.
[2] STOP is an acronym for Short Term Offender's Program. If a juvenile successfully completes the three-month program, he can be released on probation for the remaining portion of his sentence.
[3] The record also contains a disposition letter from Ms. Founce. It indicates J.N. had been employed by Cafe Reconcile, but had quit.
[4] Although this Court is not privy to J.N.'s juvenile record, it is apparent that one exists based on his participation in drug court. The trial judge no doubt considered his previous record, along with the commission of this crime, when he sentenced J.N.